# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR AGUILAR,<br><br>       Petitioner,<br><br>    v.<br><br>SCOTT FRAUEHHEIM, Warden,<br><br>       Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:14-cv-01994 LJO JLT<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. 1) |

      Petitioner challenges a 2012 prison disciplinary determination in which prison officials found he battered an inmate with a weapon and assessed him a loss of 360 days credit.

      Petition twice filed habeas petitions in the state trial court challenging the prison discipline. In the first, he attached a copy of the Third Level Director's Decision demonstrating exhaustion of his administrative appeal. The court denied this petition without prejudice because he failed to provide a full copy of the investigation report of the alleged rules violation. In the second petition, Petitioner failed to attach the documents demonstrating administrative exhaustion. Nevertheless, by reference to the earlier-filed petition, the state trial court found Petitioner had exhausted his administrative remedies but denied the petition on its merits.

      Petitioner then filed a petition with the Fifth District Court of Appeal. Though he raised the same issues as raised here, the 5th DCA affirmed the denial but did so based upon his failure to demonstrate administrative exhaustion. The California Supreme Court summarily denied his

1 subsequent petition.

2 Respondent argues that the Court should deny the petition as unexhausted because the lack of a
3 record demonstrating administrative exhaustion deprived the California Supreme Court of its
4 opportunity to address the petition on its merits. Alternatively, Respondent argues the Court should
5 deny the petition on its merits. The Court concludes the petition lacks merit and recommends it be
6 **DENIED**.

7 I. **FACTUAL HISTORY**[1]

8 On September 2, 2012, while housed at Avenal State Prison, three correctional officers saw
9 three inmates, Rubalcava, Alvarez and Petitioner fighting. Rubalcava and Alvarez were striking
10 Petitioner and he was striking them in the head and upper body. A staff member ordered the inmates
11 to the ground and used pepper spray to obtain compliance by Rubalcava and Alvarez. A staff member
12 noticed that Rubalcava had "a laceration and a puncture" wound caused by the fight. The officers
13 searched the area and found an "inmate manufactured" purple stabbing weapon about ten feet from
14 where Petitioner lay.

15 In the subsequent investigation, Sergeant Kraemer interviewed a confidential informant who
16 reported that he saw the fight and saw Petitioner stab Rubalcava in the left hand. The inmate saw
17 Petitioner swinging an object as he advanced at Rubalcava who shielded his face. This resulted in
18 Petitioner stabbing Rubalcava underneath his left arm. When Rubalcava retreated, the informant saw
19 Petitioner throw the weapon away.

20 A second confidential informant reported that he witnessed Petitioner approach Alvarez and
21 yell at him and push him until a fight erupted. Then, Rubalcava joined in. The informant saw
22 Petitioner remove a "pinkish purple" weapon from his waistband. The inmate reported that he saw
23 Petitioner swing the weapon at Rubalcava and twice make contact with it. Then, Petitioner threw the
24 weapon behind him and continued to fight. Correctional Officer Kraemer concluded that Rubalcava's
25 injuries and the photos of the scene corroborated the accounts of the informants. When the Senior
26 Hearing Officer considered this evidence at the disciplinary hearing, he found it was corroborated and

27
28 [1] These facts are taken from the summary of evidence contained in the November 8, 2012 decision issued by the prison disciplinary Senior Hearing Officer. (Doc. 10-2 at 15-22).

that it demonstrated that Petitioner battered Rubalcava with a weapon.

Officer Ruiz described finding the weapon. He said he found it about ten feet from where Petitioner lay after officers ordered him to the ground. The weapon was "purple plastic measuring about 8½ inches in length by ½ inch in width and sharpened to a point at one end." The SHO determined that this evidence corroborated what the informants reported, including that Petitioner battered Rubalcava with a weapon, that was pinkish purple in color and that he threw the weapon away during the fight.

Officer Chastagner reported that when he placed Rubalcava in handcuffs, he discovered he had a puncture wound on Rubalcava's left triceps and left thumb. The SHO determined this evidence proved that Petitioner struck Rubalcava at least twice with the weapon and then discarded it before staff members arrived. The medical evidence revealed that Rubalcava had an abrasion/scratch on his abdomen and to the back of his right elbow and a puncture wound to his left inner triceps and a "cut/laceration/slash to the lower inner aspect of his left thumb." The SHO found that this demonstrated that Rubalcava suffered injuries from a "puncture/slashing type weapon" during the fight and that Petitioner was the one wielding the weapon. The SHO concluded also that finding the weapon close to Petitioner demonstrated that he was the one who used it.

The SHO questioned Petitioner who denied he had been in a fight, denied he considered Rubalcava or Alvarez to be his enemies and claimed the officers were lying. The SHO discounted Petitioner's claims as inconsistent with the other corroborated evidence. As a result, the SHO found Petitioner guilty of the offense and assessed him a loss of 360 days of credit.

Petitioner appealed this determination through the prison's administrative process. (Doc. 10-1 at 20-24) His First Level Review was bypassed directly to the Second Level. Id. at 21. At the Second Level Appeal, Petitioner complained that none of the officers saw him use a weapon and that they were too distant to see this. Id. at 24. The reviewing officer noted that Petitioner received the due process rights including receiving the rules violation report within 15 days, attending the disciplinary

hearing, which occurred within 30 days of the referral of the matter for prosecution.[2] Id. at 25.  Also, all of the time deadlines were met, including providing Petitioner copies of the evidence and investigative report 24 hours before the hearing.  Id.  In addition, Petitioner was permitted to ask questions of the witnesses through the SHO.  Id. at 26.  As to the merits of the claim, the reviewing officer determined there was sufficient evidence to support the SHO's determination of guilt by a preponderance of the evidence.  (Doc. 10-1 at 27)  Thus, the reviewing officer granted Petitioner's request to review the matter but denied it on its merits.  Id.

Petitioner appealed to the Director's Level.  (Doc. 28-30)  In this appeal, Petitioner claimed the evidence was misleading and unreliable.  Id. at 28.  He raised the same arguments as before but admitted the officers reported seeing him fighting.  Id. The Director, through a representative, reviewed the evidence once again and determined there was sufficient evidence Petitioner engaged in a fight and used a weapon on Rublacava.  Id. at 28-29. The Director noted,

> The SHO deemed the confidential informants reliable based upon the fact that part of the information was proven true through independent investigation, the source incriminated himself in a criminal activity at the time of providing the information, and more than one source independently provided the same information. The SHO articulates in the findings the weight that was given to the confidential informants and the SHO accurately articulates the basis for finding the informants reliable. The [Third Level Review] notes that the appellant was observed by confidential informant stabbing inmate Rubacalva with a weapon; therefore, he was charged with Battery on an Inmate with a Weapon.  The [Third Level Review] acknowledges that the responding staff did not observe the appellant strike the other inmate with a weapon, and that the reports are not identical. However, all persons have a different perception of the incident, and the fact the staff may not have seen the appellant with a weapon does not mitigate the testimony provided by the staff members who recovered a weapon at the crime scene or the confidential informants who did see the weapon being used by the appellant. The fact remains' that the [Reporting Employee] and other staff members, observed and positively identified the appellant in the engaged in a fight and confidential informants observed the appellant use a weapon. The [Third Level Review] finds that the physical evidence supports the reports and the guilty finding of the SHO.

(Doc. 10-1 at 29) The final appeal concluded, "Despite the appellant's dissatisfaction with the decision reached by the [Second Level Review], the [Third Level Review] concludes that the appellant has not presented any meaningful information that would warrant modifying the RVR.  In view of the above, no relief is provided at the [Third Level Review]."  Id.   Thus, the appeal document informed

---

[2] The District Attorney in Kings County rejected the matter based upon "insufficient evidence." (Doc. 10-1 at 25; Doc. 10-2 at 62; )

4

Petitioner, "This decision exhausts the administrative remedy available to the appellant within CDCR." Id. at 30.

Petitioner then filed his petition for writ of habeas corpus in the superior court in December 2013. (Doc. 10-1 at 5-36)  This petition, numbered 14W0018A, raised claims that he was denied due process to have witnesses present and to present documentary evidence and because the matter was not properly investigated and because he claimed there was insufficient evidence to support the guilty finding. Id. at 14-18. Toward this end, Petitioner claimed that he requested Rubalcava and Alvarez to be present at the disciplinary hearing. Id. at 15-16.  In addition, he claimed the investigating employee assigned to assist him, "failed to adequately investigate, [and] failed to gather evidence relevant to defense" such to constitute a due process violation. Id. at 17.  Finally, Petitioner argued there was insufficient evidence to prove he used the weapon. Id. at 18.  Attached to this petition were his appeal documents at the First, Second and Third Level Review. (Doc. 10-1 at 20-37)  He attached also portions of the RVR investigatory reports but he did not file the decision of the SHO. Id.

In the ruling, the Kings County Superior Court noted, "Petitioner administratively exhausted his claims on June 4, 2013 at the Third Level Review." (Doc. 10-1 at 37)  However, the Superior Court denied the petition because he failed to include "a full copy of the Rules Violation Report" and noted, "[w]ithout a full copy of the Rules Violation Report, this court is unable to determine where there is "some evidence" in the record to support the finding of guilt reached in connection with Rules Violation Report . . ." Id.  Thus, the court denied the petition without prejudice. Id. at 38.

Petitioner refiled his petition in case number 14W0018B. (Doc. 10-1 at 43-76)  This time, Petitioner included the SHO report but did not attach any of his appeal documents or any results from his Second or Third Level Review. Id.  Nevertheless, the Superior Court once again determined Petitioner had exhausted his administrative remedies by relying upon the earlier determination made on the prior habeas petition. Id. at 41.  However, the court denied the petition on the merits. Id. at 41-42.  The court noted that Petitioner was not entitled to the full panoply of due process rights. Id. at 41. The court observed that the evidence from the informants was independently corroborated by the type of injuries Rubalcava suffered, the location of the weapon found at the scene and the statement of Officer Chastagner. Id. at 42.  The court noted that even without reviewing the statements of the

informants, it was clear that the statements were reliable when compared to the petition and the exhibits attached. Id. Thus, the court concluded there was "some evidence" to support the guilt finding. Id.

Petitioner then filed a petition for writ of habeas corpus in the 5th DCA. (Doc. 10-2 at 3-37) In the petition, he claimed, "I exhausted my administrative remedies. See Exhibit D hereafter." Id. at 12. Notably, Exhibit D included the last page of the Superior Court decision but this page and the others provided in Exhibit D, did not demonstrate administrative exhaustion. Id. at 13. The 5th DCA denied the petition without prejudice as follows:

> The "Petition for Writ of Habeas Corpus," filed on July 8, 2014, is denied without prejudice. Petitioner fails to demonstrate exhausting his available administrative remedies, or that an exception to the exhaustion requirement exists. (*McKart v. United States* (1969) 396 U.S. 185, 193-195; *In re Dexter* (1979) 25 Cal.3d 921, 925.)

Id. at 2. Rather than refiling his petition with the 5th DCA, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. Id. at 39-77. On the face page, Petitioner wrote, "Note: Petitioner administratively exhausted his claims on June 4, 2013 at the Third Level Review. See Exhibit 'D.'" Id. at 40. This time, Exhibit D contained a copy of the ruling on his first Superior Court petition. Id. at 67-68. As noted above, the ruling reads, "Petitioner administratively exhausted his claims on June 4, 2013 at the Third Level of Review." Id. at 67. Petitioner also attached a copy of the ruling on his second petition filed in the Superior Court as Exhibit F. Id. at 75-76. This ruling reads, "The Order in Kings County Superior Court Case No. 14W0018A indicates that Petitioner administratively exhausted the claims at issue herein on June 4, 2013." Id. at 75. The California Supreme Court summarily denied the petition.[3] (Doc. 1 at 41)

In his current petition before this Court, Petitioner raises the same grounds as in the California

---

[3] The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir.); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th. Cir. 1980). As such, the internet website for the California Courts, containing the court system's records for filings in the Court of Appeal and the California Supreme Court are subject to judicial notice. The Court **GRANTS** Respondent's request (Doc. 10 at 3, n. 1) that it take judicial notice of the docket of the California Supreme Court related to Petitioner's petition in Case number S221218.

Supreme Court. Namely, Petitioner claims there was insufficient evidence that he battered another inmate with a weapon (Doc. 1 at 6; Doc. 10-2 at 42-46), that he was denied his right to confront his accusers (Doc. 1 at 7; Doc. 10-2 at 47-48), that he was denied his "double jeopardy rights" (Doc. 1 at 8; Doc. 10-2 at 49).

Respondent argues the Court should deny the petition as unexhausted. He argues that Petitioner's failure to re-file his petition in the 5th DCA, to include evidence he exhausted his administrative remedies, deprived the state court of the right to determine the petition on the merits. Respondent argues further that the mere fact that Petitioner included the additional documents when he filed his petition in the California Supreme Court is of no effect given the fact the Court did not deny the petition on the merits but upon the rationale set forth by the 5th DCA. Alternatively, Respondent argues that the petition fails on the merits because there is no showing that the he is entitled to habeas relief; rather he shows only that he disagrees with the determination made.

### III.   DISCUSSION

    A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged disciplinary proceeding occurred at Avenal State Prison, in Avenal, California, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). This petition was filed after the enactment of the AEDPA and is governed by its provisions.

B.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001

(9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  The Court assesses the prejudicial impact of any constitutional error by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Exhaustion

Respondent argues the petition is unexhausted because of a procedural default.  Though appreciating Respondent's argument, given the unique facts of this case and its posture, the Court declines to engage in the exhaustion analysis.  Rather it assumes, without deciding, the petition is unexhausted but exercises its discretion under 28 U.S.C. 2254(b)(2) to deny the petition nonetheless.[4]

D. There was sufficient evidence to support the disciplinary finding

Petitioner argues there was insufficient evidence that he battered an inmate with a weapon.  He asserts that Rubalcava and Alvarez were the aggressors and that the District Attorney refused to prosecute him based upon a lack of evidence.  The superior court found there was sufficient evidence to support the guilty finding as follows: "[T]he finding of guilt is supported not only by the statements of the Confidential Informants, but also the corroborating evidence concerning the type of injuries sustained by Inmate Rubalcava, the location of the discovered weapon, and the witness statement of Correctional Officer J. Chastagner . . . Taken together, the statements and other information provide "some evidence" to support the finding of guilt reached in connection with Rules Violation Report, Log No. FF-12-09-001."  The Court agrees.

---

[4] Notably, according to Jamerson v. Runnels, 713 F.3d 1218, 1227 (9th Cir. 2013), on a § 2254 petition, the Court may consider evidence available to the state trial court, even if this evidence was not included in the record lodged with the courts of appeal.

The decision to revoke an inmate's good-time credit does not comport with minimum procedural due process requirements unless its underlying findings are supported by "some evidence." Superintendant v. Hill, 472 U.S. 445, 454 (1985). In reviewing a decision for "some evidence," courts "are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." Id. at 455-56. The Ninth Circuit has further held that there must be "some indicia of reliability of the information that forms the basis for prison disciplinary actions." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (uncorroborated hearsay statement of confidential informant with no firsthand knowledge is not enough evidence to meet Hill standard.)

Title 15, Section 3005(d)(1) of the California Code of Regulations prohibits an inmate from committing a battery on another. Though Petitioner argues that he was not the aggressor as a means of demonstrating he acted only in self-defense, he ignores the evidence to the contrary. One witness reported that Petitioner approached Alvarez and began yelling at him. (Doc. 1 at 24) Petitioner began pushing Alvarez, which started the fight. Id. Only then did Rubalcava join in. Id. This is sufficient evidence that Petitioner was the aggressor and was not acting in self-defense. Petitioner's argument that the officers noted that the other two were striking him and he was striking them back means that he was not the aggressor, is unsupported. Rather, no officer suggests who started the fight.

In addition, the fact that the Kings County District Attorney refused to file charges is irrelevant to the disciplinary determination. A criminal case must be proved beyond a reasonable doubt; the prison disciplinary action need only be proved by a preponderance of the evidence. (Doc. 1 at 19) Thus, the fact that a criminal prosecution does not take place has no bearing on whether prison officials may punish an inmate for rules violations. Indeed, Title 15, section 3316(c)(2) of the California Code of Regulations provides, "A decision to not prosecute or a court's dismissal of criminal charges without acquittal shall not prohibit or alter a departmental disciplinary hearing on the rule violation charges." Thus, as noted by the superior court, the evidence was significant that Petitioner engaged in a physical fight with Rubalcava and Alvarez. Afterward, the officers examined Rubalcava and found puncture and slashing wounds consistent with injury by a stabbing weapon. A few feet away from where

Petitioner lay, the officers found an inmate manufactured knife-like weapon. This is sufficient evidence to support the "some evidence standard." Moreover, the evidence from the confidential informants demonstrated that Petitioner pulled the weapon from his waistband and slashed at Rubalcava and struck him twice as Rubalcava backed away. Then, Petitioner threw the weapon to the ground before the officers arrived. The evidence is significant in support of the determination that Petitioner battered Rubalcava with a weapon. Thus, the petition on this basis should be **DENIED**.

E.    There was no due process violation at the disciplinary hearing

Petitioner's primary contention is that prison officials denied him his federal due process rights at the disciplinary hearing, related to the reliance upon the statements of the confidential informants. Notably, the superior court considered this claim and found,

> In this case, the finding of guilt is supported not only by the statements of the Confidential Informants, but also the corroborating evidence concerning the type of injuries sustained by Inmate Rubalcava, the location of the discovered weapon, and the witness statement of Correctional Officer J. Chastagner. It is not necessary for this court to review the confidential portions of the Informant statements because their reliability it is clear from the face of the petition and attached exhibits. (See, Cal. Code of Regs,, tit 15, §3321 (a)(4).)

(Doc. 10-2 at 76)  The Court agrees.

Under the Fourteenth Amendment, no state shall deprive any person of life, liberty, or property without due process of law. Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). A prisoner in a prison disciplinary hearing is not entitled to the full array of due process rights that a defendant possesses in a criminal prosecution. Id. at 556. However, a prisoner who is accused of serious rules violations and who may be deprived of his or her good-time credits is entitled to certain minimum procedural protections. Id. at 571-71 n. 9.

The process due in such a prison disciplinary hearing includes: (1) written notification of the charges; (2) at least a brief period of time after the notice to prepare for the hearing; (3) a written statement by the fact-finders as to the evidence relied on and reasons for the disciplinary action; (4) the inmate facing the charges should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or

11

1  correctional goals.  Id. at 564, 566, 570.

2  Though his second argument raised in the petition claims that he was denied his right to
3  confront the informants, Petitioner points to no portion of the record that supports that he ever
4  requested to have the informants testify at the disciplinary hearing. (Doc. 1 at 14)  Petitioner argues that
5  he never *waived* the right to have these witnesses present but, indeed, he never made this request and he
6  had no *right* to call these witnesses. Rather, "[c]onfrontation and cross examination are not generally
7  required and are left to the sound discretion of the prison official. Ponte, 471 U.S. at 495-96."
8  Zimmerlee v. Keeney, 831 F.2d 183, 187 (9th Cir. 1987)

9  On the other hand, it appears that Petitioner's true argument in this regard is that he believes the
10 confidential informants do not exist—and their purported statements were falsified by prison
11 officials—or, if the informants do exist, they are Rubalcava and Alvarez.  (Doc. 1 at 7)  He seems to
12 argue that he is entitled to have their identities revealed; he is wrong. Zimmerlee, at 186 ["Due process
13 does not require that an informant's identity be revealed to an inmate."] Rather, prison officials may
14 withhold this information and still rely upon it if there is evidence the information is reliable and safety
15 considerations prevent the disclosure.  Id.

16 In his written report, the SHO noted his concern that if the identities of the informants were
17 made known to Petitioner, their safety and the security of the institution would be jeopardized due to
18 the danger of retaliation.  (Doc. 1 at 19)  The SHO also found the information provided by the
19 informants was corroborated by observations of staff that Petitioner fought with Rubalcava, Rubalcava
20 suffered stab wounds during the fight and they found the weapon within a few feet of Petitioner.  Id. at
21 19-20.  The SHO also found the information to be reliable because it incriminated the informants.  Id.
22 Given this, the Court concludes that all of the basic due process requirements were met in this case,
23 thus precluding any finding that habeas relief is justified.  Wolff v. McDonnell, 418 U.S. 554, 556, 570.
24 On the other hand, as noted above, even if the Court disregarded the evidence from the informants,
25 there still would be "some evidence" to support the disciplinary decision. Thus, the petition on this
26 basis should be **DENIED**.

27 F.       Double jeopardy is not implicated
28 Petitioner argues that because the Kings County District Attorney refused to press charges

against him as a result of the incident but he was required to undergo a disciplinary hearing, his double jeopardy rights have been infringed. The Court disagrees.

The Fifth Amendment to the Constitution provides that no person may "be subject for the same offence to be twice put in jeopardy of life." This is the Double Jeopardy Clause and it applies to the states under the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Thus, no person—inmate or not, may be required to suffered multiple trials on the same charge or more than one punishment for the same charge. United States v. DiFrencesco, 449 U.S. 117, (1980); United States v. Arrelano–Rios, 799 F.2d 520 (9th Cir.1986).

Petitioner's argument that he could not suffer discipline for the act because the DA chose not to prosecute him, on its face, does not implicate the Double Jeopardy Clause. A refusal to prosecute is simply not equivalent to suffering a trial. Thus, the argument fails. Moreover, even if he had been prosecuted and convicted, still, he could be subject to a prison disciplinary action.

The Ninth Circuit has found that an inmate may suffer criminal prosecution regardless of whether he has been assessed a sanction for the same act in a prison disciplinary proceeding. In United States v. Brown, 59 F.3d 102, 104 (9th Cir. 1995), the Court held, "the prohibition against double jeopardy does not bar criminal prosecution for conduct that has been the subject of prison disciplinary sanctions for two independent reasons: 1) even if the sanctions were "punishment," they were integral parts of [the] single punishment for [the underlying crime for which prison was imposed]; and 2) the sanctions are not punishment for purposes of double jeopardy because they are solely remedial." The Court clarified that,

> [A]s a practical matter applying the prohibition against double jeopardy to prison disciplinary proceedings would effectively compel the government to choose between remedial and punitive goals. Seeking disciplinary sanctions and criminal penalties in a single proceeding is not feasible: "[t]he difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline." United States v. Newby, 11 F.3d 1143, 1146 (3rd Cir.1993); see also Garrity, 41 F.3d at 1153. If prison authorities waited until prosecutors decided whether to bring charges and criminal proceedings were completed, the offending inmate might remain in the prison as a threat to institutional order for an extended period. [Footnote] If, on the other hand, prison authorities acted to maintain order by promptly sanctioning the inmate, criminal prosecution would be barred.

Id., footnote omitted. The Court explained that a loss of credits serves, "the remedial goals of

maintaining institutional order and encouraging compliance with prison rules in a situation "where good order and discipline are paramount because of the concentration of convicted criminals." <u>Newby</u>, 11 F.3d at 1145; <u>United States v. Hernandez–Fundora</u>, 49 F.3d 848, 852 (2d Cir.1995) ("[T]he fact that remedial concerns require 'punishing' individuals for violent or other disruptive conduct does not mean that the sanctions imposed constitute punishment for double jeopardy purposes."); see also <u>Garrity</u>, 41 F.3d at 1152–53 (7th Cir.1994) (rejecting argument that Halper altered the well-settled rule that prison disciplinary sanctions do not generally bar subsequent criminal prosecution for same conduct). <u>Lucero v. Gunter</u>, 17 F.3d 1347, 1351 (10th Cir.1994) (holding that prison disciplinary hearings "do not implicate double jeopardy concerns")." <u>Id</u>. at 105.  Thus, the petition on these grounds should be **DENIED**.

### **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus (Doc. 1), be **DENIED** with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **March 2, 2016**           **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE